STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2025 CA 0040

VALERIE HARDING

VERSUS

LDH-AGING AND ADULT SERVICES

Judgment Rendered: **JUN 2 4 2025**

* * * * *

ON APPEAL FROM THE
STATE CIVIL SERVICE COMMISSION
IN AND FOR THE STATE OF LOUISIANA
DOCKET NUMBER S-18960

HONORABLE DAVID L. DUPLANTIER, CHAIRMAN;
D. SCOTT HUGHES, VICE-CHAIRMAN;
J. STEWART GENTRY, JO ANN NIXON, CANDES C. CARTER,
CRAIG A. NETTERVILLE & CODI PLAISANCE

BYRON P. DECOTEAU, JR., DIRECTOR
DEPARTMENT OF STATE CIVIL SERVICE

* * * * *

Danatus H. King
New Orleans, Louisiana

Attorney for Plaintiff-Appellant
Valerie Harding

Charles E. Watkins, Jr.
New Orleans, Louisiana

Attorney for Defendant-Appellee
LDH-Aging and Adult Services

Sherri Gregoire
Baton Rouge, Louisiana

Attorney for
Department of State Civil Service

BEFORE: **PENZATO, STROMBERG, AND FIELDS, JJ.**

**FIELDS, J.**

Valerie Harding, a former employee of the Louisiana Department of Health, Office of Aging and Adult Services ("OAAS"), appeals a decision of the Louisiana State Civil Service Commission ("the Commission") that denied her appeal of the OAAS's termination of her employment. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On May 22, 2024, Ms. Harding, a "Program Manager 2 DHH" employed by OAAS, who had a probationary appointment, was hand delivered a letter, signed by Melinda Richard, Appointing Authority, notifying her that her employment with OAAS was terminated effective that same day.[1] According to Ms. Harding's appeal, Ms. Harding had been employed with the State for more than 33 years, and in March of 2023, she was promoted and received probationary appointment as a Program Manager 2 DHH with OAAS. Ms. Harding alleged that before her promotion, she achieved permanent civil service status as an Adult Protective Specialist Supervisor and throughout her tenure, she consistently received positive performance evaluations.

On June 20, 2024, Ms. Harding, through counsel, filed an appeal of her termination with the Commission. In the appeal, Ms. Harding alleged that her termination was discriminatory and based on personal animosity and other non-merit factors.[2]

On July 10, 2024, the Commission referee issued a notice of possible defect to Ms. Harding. In the notice, the referee noted Ms. Harding was a probationary

---

[1] According to Ms. Harding, before her termination, she was offered three choices: retirement, resignation, or a position as a "APS Specialist in Region I/Job Appointment." Ms. Harding indicated that the APS Specialist position was not classified, was four steps below her current position, and a substantial reduction in pay.

[2] Ms. Harding also appealed her termination on the ground that she filed a request pursuant to the Family Medical Leave Act. However, on appeal to this court, Ms. Harding does not challenge her termination based on any claim concerning the Family Medical Leave Act.

2

employee and "[p]robationary separations [were] only appealable if the employee alleges that the action or decision violated the Civil Service Article or a Civil Service Rule or discriminated against the employee because of political or religious beliefs, race, or sex." The referee indicated that "[d]iscrimination claims must be pled in accordance with Civil Service Rule 13.11(d)." The referee found Ms. Harding's appeal lacked "specific facts, alleged in detail, to support the assertion that the action or decision violated the Civil Service Article or a Civil Service Rule." The referee gave Ms. Harding 15 days to either explain in writing why the appeal should not be summarily dismissed because of the defect or amend the appeal in a manner that complied with Rule 13.11(d) to cure the defect(s) noticed.

On July 18, 2024, Ms. Harding filed an amended appeal that set forth allegations similar to the allegations set out in the original appeal. On July 30, 2024, the Commission, Chief Referee/Appeals Administrator[3] issued her decision. The Chief Referee found that Ms. Harding failed to show her termination as a probationary employee violated the Civil Service Article or a Civil Service Rule because Ms. Harding failed to "name others who [were] similarly situated that were treated differently due to a specific non-merit factor, and one over which the Commission [had] jurisdiction; namely race, gender, religion or political affiliation. Nor [had Ms. Harding] identified how her actions were the same as others or related that conduct to a specific type of discrimination." The Chief Referee noted that "[m]ere allegations of prejudice, discrimination/retaliation, manifestations of personal animosity, being devalued or the victim of bias [were] insufficient."

On August 5, 2024, Ms. Harding filed a request for review of the Chief Referee's decision with the Commission. In the request for review, Ms. Harding asserted the referee's decision was wrong in finding that Ms. Harding's appeal and

---

[3] The Chief Referee and the commission referee are two different individuals and are referred to as such.

3

amended appeal did not satisfy the requirements of Civil Service Rule 13.11; that Ms. Harding failed to name others who were similarly situated, but treated differently because of a specific non-merit factor of which the Commission had jurisdiction; and Ms. Harding failed to identify how her actions were the same as others or related that conduct to a specific type of discrimination.

On September 4, 2024, the Commission issued its decision, denying Ms. Harding's request for review of the Chief referee's decision, rendering the Chief referee's decision final. This decision is the subject of the instant appeal.

## ASSIGNMENTS OF ERROR

Ms. Harding sets forth three interrelated assignments of error:

1. The Commission erred in finding Ms. Harding had no right to appeal to the Commission.

2. The Commission erred in summarily dismissing Ms. Harding's [a]ppeal.

3. The Commission erred in finding Ms. Harding's [a]ppeal failed to satisfy the requirements of [Civil Service Rule] 13.11, particularly sections (d) 2, 3, 4, and 5.

## STANDARD OF REVIEW

Decisions of Civil Service Commission Referees are subject to the same standard of review as decisions of the Commission itself, which are subject to the same standard of review as a decision of a district court. Accordingly, factual determinations of the Commission or referee should not be reversed or modified unless clearly wrong or manifestly erroneous. However, as to the Civil Service Commission or Referee's interpretation of laws and regulations, we perform our traditional plenary functions and apply the error of law standard. **Harris v. Department of Public Safety & Corrections - Dixon Correctional Institute,** 2022-1188 (La. App. 1st Cir. 6/2/23), 370 So.3d 43, 48. The issue before us is a procedural one involving a determination of the sufficiency of an allegation rather than a factual finding. The deferential standard of review afforded to factual findings

4

are, therefore, inapplicable to our review of the referee's decision for legal error. **Marcantel v. Department of Transportation and Development**, 590 So.2d 1253, 1256 (La. App. 1st Cir. 1991).

## DISCUSSION

On appeal, Ms. Harding asserts that it is "unquestionable" that her appeal states she was discriminated against for political reasons; therefore, she argues that her appeal stated a valid cause of action for relief. Ms. Harding further asserts that as she stated a valid cause of action pursuant to Civil Service Rule 13.10(b), the Commission erred in summarily dismissing her appeal. Lastly, Ms. Harding asserts that she satisfied the requirements of Civil Service Rule 13.11(d) 2, 3, 4, and 5.

The State Civil Service Commission is vested with "exclusive power and authority to hear and decide all removal and disciplinary cases" and to appoint referees to hear and decide removal disciplinary cases. La. Const. art. X, § 12(A). The referees' decision "is subject to review by the commission on any question of law or fact[.]" La. Const. art. X, § 12(A). The commission's final decision "shall be subject to review on any question of law or fact upon appeal to the [C]ourt of [A]ppeal wherein the commission is located[.]" La. Const. art. X, § 12(A). The commission's jurisdiction to hear appeals is limited to two categories of claims: discrimination claims under Article X, § 8(B) of the Louisiana Constitution, and removal or disciplinary claims under Article X, §§ 8(A) and 12(A) of the Louisiana Constitution. **Dogans v. Department of Revenue**, 2013-1196 (La. App. 1st Cir. 2/18/14), 142 So.3d 20, 24. "[A] state classified employee who has been discriminated against in any employment action or decision because of his political or religious beliefs, sex or race" has a right to appeal to the Commission. Civil Service Rule 13.10(b). An appeal to the Commission may be summarily dismissed on the ground "[t]hat the appellant has no legal right to appeal." Civil Service Rule 13.14(a)(2).

5

In summarily dismissing Ms. Harding's appeal, the referee determined that Ms. Harding insufficiently alleged discrimination according to Civil Service Rules, and therefore, had no legal right to appeal. Civil Service Rule 13.11 sets out what must be included in a notice of appeal. It provides, in pertinent part:

A notice of appeal must:

. . .

(d) Contain a clear and concise statement of the actions complained against and a clear and concise statement of the basis of the appeal. Where discrimination is alleged to be a basis for appeal, specific facts supporting the conclusion of discrimination must be alleged in detail. The specific facts required will vary depending on the nature of the appeal; however, the facts must be alleged in sufficient detail to enable the agency to prepare a defense. A conclusion of discrimination is not sufficient. The types of facts which must be included are:

1. the date, time and place the discriminatory action took place;

2. the name of the person or agency alleged to have taken the discriminatory action;

3. a description of how appellant's action, conduct or performance was the same as that of other persons who were treated differently;

4. the names of other persons treated differently and the dates the different treatment occurred;

5. a description of events, including the dates and circumstances thereof, which led appellant to believe that the adverse decision was based on his religious or political beliefs, sex, race, or any other non-merit factor.

Where a violation of the Article or a Rule is alleged to be a basis for appeal, specific facts supporting the conclusion that a violation has occurred must be alleged in sufficient detail to enable the agency to prepare a defense.

Although permanent status employees in the classified civil service have the right to appeal disciplinary actions to the Civil Service Commission, an employee who has not obtained permanent status (*i.e.*, a probationary status employee), is not entitled to review of an appointing authority's action by the Civil Service Commission unless there is an allegation of discrimination. **Kling v. Louisiana**

6

**Department of Revenue**, 2018-1480 (La. App. 1st Cir. 7/18/19), 281 So.3d 696, 708, writs denied, 2019-01434, 01441 (La. 11/5/19), 281 So.3d 671.

In Ms. Harding's appeal of her termination, dated June 20, 2024, Ms. Harding described several incidents in which she alleged that her supervisor, Shannon Ioannou's, actions constituted discriminatory actions. Ms. Harding alleged that on January 29, 2024, she participated in a conference with Ms. Ioannou about her "PES[4] Mid-Year Review FY24." Ms. Harding indicated that the meeting lasted one hour and forty-five minutes because of Ms. Ioannou's inability to provide "solid answers" to Ms. Harding's questions about the "PES." Ms. Harding described this incident as the beginning of Ms. Ioannou's discriminatory refusal to address Ms. Harding's managerial needs. Ms. Harding insisted that the managers of the other sections received positive attention from Ms. Ioannou.

Ms. Harding also alleged that on February 2, 2024, during a weekly meeting with Ms. Ioannou, Ms. Ioannou began the meeting with the statement, "I don't have anything to discuss today." Ms. Harding insisted that Ms. Ioannou's silence left her "without guidance in her role as a manager." She considered Ms. Ioannou's refusal to provide guidance to be discriminatory because she alleged that Ms. Ioannou provided continuous guidance to the Intake/Facility Manager, Shelly Hebert ("Ms. Herbert").

Ms. Harding described another incident that occurred on February 6, 2024. Ms. Harding alleged that after her "PES Mid-Year" review, during her weekly meetings with Ms. Ioannou, Ms. Ioannou began the meetings with the statement that "she had nothing to discuss/no agenda" despite the fact that Ms. Harding's mid-year review completed by Ms. Ioannou and Sharon Jackson ("Ms. Jackson"), Program Director, Adult Protective Services, indicated Ms. Harding had many things to

---

[4] It is not apparent from the record what PES means.

7

improve on. Ms. Harding alleged that for every weekly meeting after February 6, 2024, Ms. Ioannou failed to discuss performance issues and failed to provide guidance on Ms. Harding's decisions/actions as manager. Ms. Harding insisted this was another example of "discrimination/retaliation, manifestation of personal animosity."

Ms. Harding further alleged that on February 20, 2024, she called Ms. Jackson to discuss work-related concerns, and Ms. Ioannou was also present. Ms. Harding stated that she was instructed that it was her job not to allow staff concerns to come to Ms. Jackson's level. Ms. Harding indicated that on February 26, 2024, she scheduled a meeting with Ms. Ioannou to request permission to contact an outside agency for an upcoming meeting, and Ms. Ioannou provided no additional guidance but approved of Ms. Harding's prepared statement. Ms. Harding asserted that "[t]his deprived [her] of training relating to communicating with others." Ms. Harding alleged that on that same day, Ms. Jackson called her into an impromptu meeting in which Ms. Ioannou and Ms. Hebert were also present. Ms. Harding also alleged that Ms. Jackson allowed Ms. Ioannou and Ms. Herbert to "bully" her and "call out discrepancies with the staff in Region 9." According to Ms. Harding, she was "not allowed to verbalize her thoughts." Ms. Harding stated, "[t]his was retaliation for the staff in Region 9 requesting to speak with Ms. Jackson." Ms. Harding alleged that she was advised that "her job was to prevent anyone from coming to Ms. Jackson's level." Ms. Harding asserted, "[t]his behavior had never occurred with any other managers."

Ms. Harding further alleged that on March 11, 2024, she was discriminated against by being placed on forced annual leave because of her car troubles. She asserted that other managers were given the option to work remotely. Ms. Harding stated that she was available to telework on the 11th through 13th. Ms. Harding identified other managers who were allowed to work remotely.

Ms. Harding claimed that on March 14, 2024, Ms. Hebert was willing to pass on information to a reporter about a "newly assigned open investigation without understanding the ramifications of this breach of information and violation of agency policy." Ms. Harding complained that Ms. Ioannou, in Ms. Hebert's defense, accused Ms. Harding of being incompetent in her role as a manager. Ms. Harding considered Ms. Ioannou's action to be "an act of discriminatory personal animosity that belittled Ms. Harding's ability to manage her section of the agency."

According to Ms. Harding, on April 1, 2024, "the OAAS Newsletter showed various collaborations amongst Ms. Jackson, Ms. [Ioannou], and Ms. Hebert in which Ms. Harding was not invited to participate." Ms. Harding asserted that she was denied the right to advocate for her staff of 19 in meetings previously scheduled by Ms. Jackson and Ms. Ioannou. Ms. Harding alleged that on May 6, 2024, "the OAAS's Newsletter showed various trainings attended by Ms. Ioannou that would have [been] helpful to individuals on her staff." Ms. Harding insisted, "[c]ollaboration was allowed amongst Ms. Hebert, upper management, Ms. Ioannou, and Ms. Jackson." Ms. Harding alleged that she was not invited to attend those trainings.

In Ms. Harding's amended appeal, she alleged claims similar to those alleged in her original appeal. Ms. Harding alleged that on April 29, 2024, Ms. Jackson came over to her "cubicle to discuss Ms. Harding's response to an email sent earlier and going into more detail regarding Ms. Harding's identified 'Safety Concerns[.]'" According to Ms. Harding, Ms. Jackson's response to Ms. Harding's list was a display of micro-aggression, which again cast doubt on Ms. Harding's managerial skills. Ms. Harding alleged that Ms. Jackson repeated a statement used by Ms. Jackson on various occasions that Ms. Harding "need[ed] to evolve as a manager." Ms. Harding described that statement as being "prejudicial and biased." Ms. Harding stated that Ms. Ioannou did not provide guidance, which made Ms. Harding

feel "more excluded than included as part of the management team, and favoritism was placed more on both the needs of the Intake and Facility Investigation Sections of the agency." Ms. Harding stated that she managed the non-licensed investigation section.

Ms. Harding indicated that after the discussion had on April 29, 2024, with Ms. Jackson, Ms. Harding received additional training scheduled for May 10 and May 15, 2024. Ms. Harding further indicated that she was unaware that her impending separation from OAAS was scheduled for May 22, 2024. Ms. Harding stated that "pretending to provide the needed trainings identified for Ms. Harding's management needs" was discriminatory in nature, as the truth was being hidden. Ms. Harding alleged, "[o]ther managers were not treated in that manner." Ms. Harding stated, "[a]ny representation regarding the needs of the section managed by Ms. Harding was taken in a prejudicial and biased manner as, they prefer to focus on the needs of the Intake and Facility Investigation Section of the agency." Ms. Harding complained about not being able to present on a topic that affected the section she managed at a meeting hosted by OAAS Secretary, Melinda Richard. Ms. Harding alleged that other managers were permitted to discuss issues being addressed in their sections, naming Ms. Hebert and Tanna Guidry as two of those managers.

Ms. Harding further alleged that during a manger's meeting on May 21, 2024, Ms. Jackson treated her unfairly and devalued issues relative to Ms. Harding's section in the presence of other managers. According to Ms. Harding, Ms. Jackson questioned Ms. Harding's progress on a project by asking "why is it taking so long?" Ms. Harding described Ms. Jackson's response as "aggressive, devaluing, biased and unprofessional as all appointments to complete the task were unknowingly canceled by Ms. Harding's supervisor, Ms. Ioannou."

10

In the instant case, Ms. Harding as a probationary employee could be separated by the appointing authority at any time. See Civil Service Rule 9.1(e). Therefore, Ms. Harding's appeal of her termination was limited to allegations of discrimination or a violation of the Civil Service Rules. Ms. Harding asserts she was discriminated against because of her political belief that staff employees were entitled to protection from physical harm and that those employees had a right to submit their grievances to Ms. Jackson. Ms. Harding further asserts because she continued to advocate on behalf of the staff's rights, a political battle ensued.

Ms. Harding failed to sufficiently allege that her views concerning the staff employees' protection from physical harm qualifies as a political belief, and her mere conclusion that they constitute a political belief does not give rise to an actionable claim of political discrimination. Therefore, Ms. Harding has not alleged specific facts that would adequately satisfy the requirements for a claim of discrimination based on political beliefs. Ms. Harding likewise failed to identify others who were similarly situated that were treated differently because of their political beliefs. Accordingly, Ms. Harding's conclusions that her separation was politically motivated are not sufficient to satisfy the requirements of Civil Service Rule 13.11(d). We therefore conclude, as did the referee, that Ms. Harding did not satisfy the requirements of Civil Service Rule 13.11(d). We find no merit in the assignments of error.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the referee, summarily dismissing Valerie Harding's appeal, which was adopted by the Louisiana State Civil Service Commission. All costs of this appeal are assessed to appellant, Valerie Harding.

**AFFIRMED.**

11